Jeffrey A. Wurst (JW-9744)
Daniel L. McAuliffe (DM-0956)
RUSKIN MOSCOU FALTISCHEK, P.C.
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, NY 11556
(516) 663-6600
Attorneys for Wells Fargo Bank, N.A.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In Re:

A.T. Reynolds & Sons, Inc.

       Debtor.
------------------------------X

Chapter 11

Case No. 08-37739 CGM

## BRIEF IN RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE WHY WELLS FARGO AND ITS COUNSEL SHOULD NOT BE HELD IN CONTEMPT

TO: THE HONORABLE CECELIA G. MORRIS,
   UNITED STATES BANKRUPTCY JUDGE:

Wells Fargo Bank, National Association ("Wells Fargo") and its counsel submit this brief, together with the affidavits of Jeffrey A. Wurst, Esq., Robert Ostrowe, Daniel L. McAuliffe, Esq., and Evan Zwerman, in response to the Court's Order to Show Cause, dated December 3, 2009, why Wells Fargo and its counsel should not be sanctioned for contempt of General Order 390 and the mediation order entered in this case on August 27, 2009 (the "Mediation Order"). The factual statements contained in these affidavits are incorporated herein by reference and are not repeated in this brief.

Pursuant to the Mediation Order, this Court ordered the mediation parties to participate in the mediation to be conducted in accordance with the United States Bankruptcy Court for the Southern District of New York Amended General Order for the Adoption of Procedures

473249

Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings dated January 17, 1995, as amended October 20, 1999 (as amended, the "Standing Mediation Order").[1]

The Standing Mediation Order governs, among other things, the parties' conduct during the mediation. It requires that parties to a mediation should have "settlement authority" and provides that the "willful failure" to participate in good faith in the mediation process "may result in the imposition of sanctions by the court." Standing Mediation Order at § 3.2.

While the Standing Mediation Order does not provide a definition, Black's Law Dictionary defines "good faith" as follows:

> Good faith is an intangible and abstract quality with no technical meaning or statutory definition, and it encompasses, among other things, an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage, and an individual's personal good faith is a concept of his own mind and inner spirit and, therefore, may not conclusively be determined by his protestations alone . . . In common usage this term is ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation.

A number of commentators have noted the particular difficulties in defining "good faith" in the context of mediation. *See, e.g.*, John Lande, *Using Dispute System Design Methods to Promote Good-Faith Participation in Court-Connected Mediation Programs*, 50 UCLA L. REV. 69, 86 (2002) ("The definition of good faith in mediation is one of the most controversial issues about good-faith requirements."); *see also* Holly A. Streeter-Schaefer, *A Look at Court Mandated Civil Mediation*, 49 DRAKE L. REV. 367, 372 (2001).

While we are unaware of any reported cases which have enumerated all the requirements for participating in mediation in good faith, allegations of a lack of good faith in reported cases have generally fallen into one of five categories: (i) failure to attend; (ii) failure of an

---

[1] Subsequent to the date of the mediation session, the Standing Mediation Order has been amended, restated, and superseded by General Order M-390.

organizational party to send a representative with sufficient settlement authority; (iii) inadequate preparation for the mediation, including the failure to have submitted a pre-mediation statement; (iv) insufficient efforts to resolve the matter, including the failure to make a suitable offer or any offer at all, making inconsistent legal arguments, not providing requested documents, or unilateral withdrawal from the mediation; and (v) miscellaneous allegations, including failure to sign a mediated agreement or engaging in unspecified bad-faith behavior. *Accord* Lande, *supra* at 83.

The Standing Mediation Order in the instant matter specifically requires that the representative of each party have "complete authority to negotiate all disputed amounts and issues." Standing Mediation Order at § 3.2.[2] Courts have generally found a lack of good faith only where parties failed to attend or failed to provide pre-mediation statements, while rejecting allegations of bad faith in all other situations. *See* Lande, *supra* at 84-85 (noting the findings in reported cases).[3]

The Mediator's Report, dated November 27, 2009, alleges that Wells Fargo failed to participate in the mediation in good faith.

At the December 1st hearing, the Court advised that the determination of whether there was a lack of good faith in the mediation process would be based upon "whether a person with full settlement authority appeared" and whether "they were recalcitrant in putting [the mediation] together." Dec. 1, 2009 Transcript at 5.

**Settlement Authority**

Evan Zwerman, Vice President of Wells Fargo, who attended the mediation session, was not only well-versed in the facts of the case, but had full and complete authority to settle this

---

[2] In the absence of such a specific requirement by statute or order such as the Standing Mediation Order, cases have been split where allegations of attendance of a representative lacking sufficient settlement authority have been made
[3] Our review shows that findings in reported cases since this article remains consistent.

dispute on behalf of Wells Fargo. Zwerman Affidavit ¶ 2-3, 6. The extent of Mr. Zwerman's authority is more fully set forth in the Affidavit of Robert Ostrowe. Ostrowe Affidavit ¶ 4-7.

The Mediator appears to base his opinion that Wells Fargo was represented by a "junior" and therefore lacked "settlement authority" based upon his assertion that Wells Fargo "came prepared only to repeat a pre-conceived mantra that indicated that Wells Fargo was not open to any compromise . . . ."

It is well settled not only in this circuit, but courts throughout the country that a party to a mediation is fully within its right to adopt a "no pay" position at the mediation. *Negron v. Woodhull Hosp.*, 2006 WL 759806 at **1 (2d Cir. 2006) (recognizing hospital's right to adopt a no-pay position); *Bulkmatic Transp. Co. v. Pappas*, 99 Civ. 12070, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002) (noting that a party is not required to change its settlement parameters by reason of a court order to attend a settlement conference); *Dawson v. United States*, 68 F.3d 886, 890-93 (5th Cir. 1995) (discussing how parties to a mediation must not be forced to settle or offer a settlement).

Although Wells Fargo may have entered the mediation believing that it would not be obligated to make any payments, it was open to reconsider this view if the other parties presented it with a basis for liability and/or counter-arguments to its legal position. Wells Fargo was not "entrenched" in its position, however no such basis was presented, and Wells Fargo was unpersuaded that its legal position was flawed. Still, Wells Fargo did ultimately make a settlement offer, albeit "offensive" in the Mediator's view.

Notwithstanding the Mediator's beliefs, Wells Fargo's attendee had full authority to negotiate the issues known to be in dispute in the instant mediation.

473249                                                                                  4

**Communications Preceding Mediation**

As set forth in the Affidavit of Jeffrey Wurst, Wells Fargo was not recalcitrant in setting up the mediation. Wurst Affidavit ¶ 20-32. While the Mediator's Report characterizes the mediation session being "finally agreed to with difficulty" and that Wells Fargo made a "series of unusual demands," the specific communications referred to by the Mediator are the emails attached to the Wurst Affidavit. The nature of the communications referred to parties' scheduling availability, identification of issues, and assurance that each party would be represented at the mediation by a person with authority. A review of the emails will substantiate Wells Fargo's position that such communications do not exhibit a lack of good faith.

We are not aware of any court that has found any such similar questioning prior to the mediation session, or any other actions as asserted by the Mediator to have been in bad faith.[4] As noted above, so long as a party has attended the mediation with a representative with settlement authority and to have provided a pre-mediation statement, courts have consistently rejected allegations of bad faith in all other situations. *See* Lande, *supra* at 84-85.

Wells Fargo acted in good faith, and attended the mediation session with a representative with full settlement authority after having provided a pre-mediation statement to the mediator. Although a settlement was not reached at the mediation session, this was not a result of a lack of good faith by Wells Fargo.

---

[4] In fact, in Wells Fargo's experience, it has been standard to have had identified in advance the representative to attend and the issues to be mediated.

**WHEREFORE,** for all of the foregoing reasons, Wells Fargo respectfully requests that this Court issue an order:

    a.    denying sanctions against Wells Fargo and its counsel; and

    b.    granting such other and further relief as is just.

Dated: Uniondale, New York
       December 15, 2009

          RUSKIN MOSCOU FALTISCHEK, P.C.
          Attorneys for Wells Fargo Bank, N.A.

By: _____
JEFFREY A. WURST (JW-9744)
DANIEL L. McAULIFFE (DM-0956)
East Tower, 15th Floor
1425 RXR Plaza
Uniondale, NY 11556-1425
(516) 663-6600

473249          6