**DATE: February 2, 2010 at 12:00 PM**

TARSHIS, CATANIA, LIBERTH,
MAHON & MILLIGRAM, PLLC
One Corwin Court, PO Box 1479
Newburgh, New York 12550
Telephone: (845) 565-1100
Steven L. Tarshis, Esq.
Nicholas A. Pascale, Esq.
*Attorneys for the Debtor and Debtor in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>A.T. REYNOLDS & SONS, INC, d/b/a<br>LEISURE TIME SPRING WATER,<br><br>Debtor. | Chapter 11<br><br>Case No.  08-37739 (CGM)<br><br>Related to Docket Nos. 14,121,214,203 |

**MOTION TO HOLD WELLS FARGO BANK NA
IN CONTEMPT OF COURT AND FOR OTHER AND FURTHER RELIEF**

The captioned debtor and debtor in possession (collectively, the "Debtor"), by and through their undersigned counsel submit this motion to hold Wells Fargo Bank, NA ("Wells Fargo") in contempt and for sanctions pursuant to 11 U.S.C. § 105 and Bankruptcy Rule 9020, and respectfully represent as follows:

**PRELIMINARY STATEMENT**

1. This motion emanates from an open Court agreement by Wells Fargo and its counsel to pay an outstanding Utility bill so as to facilitate the sale of the Debtor's business and assets to Boreal Water Collection, Inc., ("Boreal") at a Code section 363 sale held on March 27, 2009. Simply stated, Wells Fargo has failed to live up to its open Court agreement.

2. Rather than advance the monies out of its own pocket and against the fees of its counsel, as agreed, the payment to the Utility (NYSEG) was accounted for as a charge against the Debtor. *See*, e-mail of Evan Zwerman, "Vice President / Relationship Manager" for Wells Fargo, dated April 1, 2009, a copy of which is incorporated as Exhibit "A".

3. In the annexed e-mail, Mr. Zwerman confirms that "the $54,825.16 advanced yesterday, 3/31/09, reflected within ATR's March 2009 monthly statement under 'C/G04 - POST PETITION A/R' already includes the aforementioned $35,256.23 wired to the electric company and the $19,568.93 advanced for payroll." *See*, Exhibit "A". Therefore, it appears that Wells Fargo did not reach into its pocket or that of its counsel to pay NYSEG, but rather reached into the Debtor's pocket. To compound matters, as set forth below, it also appears that Wells Fargo reached into the pocket of Boreal. Thus, neither Wells Fargo nor its counsel paid any amount at all to NYSEG, but instead were themselves paid by the Debtor and by Boreal.

4. There is no question but that the Utility was to have been paid by Wells Fargo. *See,* Partial Transcript of March 27, 2009 proceedings at Exhibit "B" and this Court's order on the Debtor's Utility Motion at Exhibit "C". However, this was simply not done. This failure is a violation of the in Court agreement and of this Court's order on the Debtor's Utility Motion.

5. There may be a perfectly reasonable explanation for why Wells Fargo did not make the Utility payment in the manner agreed to by it. However, despite repeated inquires from this firm in that respect, no such explanation as been offered by Wells Fargo to date.

6.  Regrettably, therefore, this motion has become necessary to secure compliance with the in Court agreement and to secure an explanation from Wells Fargo as to why it apparently did not make the payment as agreed.[1]

## STATEMENT OF FACTS

7.  On December 5, 2008, (the "Petition Date"), the Debtor filed a voluntary petition ("Petition") for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. The Debtor believes the Court is familiar with the path of the case and thus the full procedural history is not recited at length herein. Relevant pieces of the case history are recapitulated below.

8.  On February 24, 2009, Wells Fargo filed a motion seeking an Order to Convert the Debtor's Chapter 11 case to Chapter 7 ("Motion to Convert"). *See* Docket No. 90. For this reason, the Debtor began marketing its business as a going concern. The Unsecured Creditor's Committee assisted the Debtor with these efforts. The Debtor and the Committee also opposed the Motion to Covert. *See* Docket Nos. 99 and 101.

9.  On March 11, 2009, the Debtor filed a motion to sell its business and assets under Code section 363. *See*, Docket No. 114. ("Sale Motion"). An order granting the Sale Motion was issued on March 12, 2009 ("Sale Order"). *See,* Docket No. 121. The Sale Order set March 25, 2009 as the deadline for any person seeking to submit a bid for the assets ("Bid Deadline"). The Sale Order also authorized the Debtor to conduct an auction sale of the assets ("Auction") on March 27, 2009 at the United States Bankruptcy Court, 355 Main Street, Poughkeepsie, New York 12601 and a scheduled a hearing on the Sale Motion to take place at the end of the Auction.

---

[1] One of the elements of contempt is whether the party charged has diligently attempted to comply in a reasonable manner. *See,* King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). Therefore, attempts by this office to secure an explanation from Wells Fargo are relevant and not the untoward disclosure of settlement efforts.

-3-

10. On March 20, 2009, Wells Fargo filed a Motion for Relief from the Automatic Stay. *See* Docket No. 147.

11. At the March 27, 2009 hearing, the Court granted the Debtor permission to use Cash Collateral until April 6, 2009 ("Second Amended Second Interim Cash Collateral Order"). *See* Docket No. 169 and incorporated by reference herein.

12. At the conclusion of the March 27, 2009 Auction, the successful bidder was Boreal Water Collection, Inc. ("Boreal"). A hearing to approve the auction results was held immediately after the Auction ("Sale Hearing").

13. During the Sale Hearing, New York State Electric and Gas ("NYSEG") appeared to object and stated unless the Debtor's accounts were paid in full, the lights would go out. This issue, if not cured, would have derailed the sale to Boreal to the detriment of Wells Fargo.

14. After extended closed door negotiations amongst the parties, Wells Fargo's counsel emerged to announce that Wells Fargo and its counsel would pay $35,256.23 to New York State Electric And Gas Corporation on or before Tuesday, March 31, 2009. Counsel's statement was later memorialized in the Court's August 13, 2009 order ("Utility Order"). *See,* Docket No. 214; *see also* excerpted pages of the transcript of that hearing which reflect the statements of Wells Fargo's counsel annexed as Exhibit "B" and Utility Order at Exhibit "C".

15. Thereafter, a "Sale Closing" took place at the offices of Wells Fargo's counsel. The Debtor did not attend this closing. A sale report was filed on May 18, 2009. *See* Docket No. 187.

16. The Debtor filed a motion to dismiss on June 19, 2009. *See* Docket No. 195. No opposition was filed.

17. In July of 2009, Boreal Water Collection, Inc. ("Boreal") filed multiple claims on behalf of Debtor's former employees to recoup wages that were allegedly paid by Boreal on behalf of the Debtor ("Wage Claims").

18. Boreal characterized the payments as a "salary advance" to the employees. It should be noted that the employees have been paid by Boreal and that this claim is to reimburse Boreal for that payment.

19. On July 8, 2009, a Motion to Allow Claims was filed by Richard J. Olson on behalf of Boreal ("Boreal Motion"). *See*, Docket No. 203. The gravamen of the Boreal Motion appears to emanate from Boreal's claim that it agreed to pay to Wells Fargo Bank ("Boreal-Wells Fargo Agreement") an additional interest point to pay for the cost of continuing utility services ("Utility Claim"). *See* Boreal Motion at ¶ 8. It appears Boreal also interpreted Wells Fargo's March 27, 2009 promise to this Court to mean that Wells Fargo would pay the NYSEG bill and that this point was to reimburse Wells Fargo for that payment.

20. A hearing was held to consider the Boreal Motion on July 14, 2009 ("Hearing"). *See* Docket No. 203. In attendance at the Hearing were counsel for the Debtor, Boreal and the Committee. Wells Fargo, though served, did not attend. On July 21, 2009, the Court entered an order approving the Boreal Motion ("Boreal Order"). *See* Docket No. 210.

21. On July 31, 2009, the Debtor filed a motion requesting the Boreal Order be reconsidered. *See* Docket No. 211. This motion was denied.

22. On August 21, 2009, the Debtor requested the issues underlying the Boreal Motion be mediated with a court-appointed mediator. *See* Docket No. 220. This request was granted. *See* Docket No. 224.

23. On September 23, 2009, Robert Goldman was selected as the mediator. *See,* Docket No. 227. A Mediation has since been held and is now the subject of a Court issued order to show cause which was heard on 31 December 2009.

24. Wells Fargo, to date, has declined to honor its open Court agreement as memorialized in the Utility Order of this Court.

25. In response to the Boreal Motion and its litigation sequelae, the Debtor examined into the matter. After further investigation, it appears Wells Fargo and its counsel failed to fulfill the promise made in open Court as confirmed under the Utility Order by charging the NYSEG payment against the Debtor's DIP account, and by collecting an additional interest point from Boreal, rather than by paying it out of pocket as promised. *See,* Zwerman E-Mail at Exhibit "A"; Boreal Note at Exhibit "D". It is the Debtor's position that the $35,256.23 which was wrongfully charged against the Debtor's account should be refunded to the Debtor. As a practical matter this money, should the Court direct it to be refunded, will largely be utilized to reimburse Boreal for the salary advances made to the former employees of the Debtor.

## JURISDICTION

26. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue of these proceedings and this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

## ARGUMENT

27. Wells Fargo's failure to comply with the terms of its open Court statements, and the Utility Order, under terms heavily negotiated and in large measure dictated by Wells Fargo, should not be countenanced by this Court.

28. Wells Fargo, either of will or neglect, elected to dishonor its agreement to pay the Utility despite that fact that it benefited greatly from the Boreal sale, which would not have gone through had NYSEG turned off the power.

29. Bankruptcy Code § 105(a) provides broad powers to this Court to manage its cases and to enforce its directions  11 U.S.C. § 105 (2009) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."); *see e.g.,* Frti v. Paine Webber Jackson & Curtis, Inc, ( *In re* Baldwin-United Corporation Litigation), 765 F.2d 343 (2nd Cir. 1985); LTV v. Board of Education of the Cleveland City School District ( *In re* Chaleaugay Corp., Reomnar, Inc.), 93 BR. 26 (S.D.N.Y. 1988).  Thus, this Court is empowered to enforce its Utility Order and the terms of Wells Fargo's in Court agreement, by holding Wells Fargo in Contempt as Wells Fargo did not honor either of them.

30. A party may be held in civil contempt for failure to comply with a court order if "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner.  King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir.1995); *see also,* Apple Corps Limited v. International Collectors Soc'y, 15 F.Supp.2d 456, 465 (D.N.J. 1998) ("'absent extraordinary reasons, such as fraud or impossibility' failure to obey a court judgment constitutes contempt") (quoting, Harley Davidson, Inc. v. Morris, 19 F.3d 142, 146 (3d Cir. 1994)).

31. "A party seeking to hold another in civil contempt bears the burden of proof to establish, by clear and convincing evidence that a violation occurred, such as noncompliance with an order." *In re* Flushing Hosp. and Medical Center, 395 B.R. 229, 241 (Bankr.

E.D.N.Y.2008) *citing,* King*, id.*; Levin v. Tiber Holding Corp*.,* 277 F.3d 243, 250 (2d Cir.2002).

32.   It must also be proven that the alleged contemnor "had knowledge of and disobeyed a clear, explicit and lawful order of the court and that the offending conduct prejudiced the right of the [other] party." Levin*,* 277 F.3d at 251 (*quoting* Sager Spuck Statewide Supply Co. v. Meyer*,* 282 A.D.2d 971, 723 N.Y.S.2d 732, 733 (N.Y.App.Div.2001)).

33.   A court may hold a party in contempt even if that party acted in good faith. Vuitton et Fils S.A. v. Carousel Handbags, 592 F.2d 126, 129 n. 2 (2d Cir.1979); *see* Robin Woods Inc. v. Woods, 28 F.3d 396, 398 (3d Cir. 1994) ("Willfulness is not a necessary element of civil contempt," and "good faith is not a defense to civil contempt"); *see also* Harley Davidson, 19 F.3d at 148; Apple Corps, 15 F.Supp.2d at 465-66.

34.   As stated previously, the Bankruptcy Court has the inherent power, pursuant to 11 U.S.C. § 105, to hold parties in civil contempt for violation of its own orders. *See In re* Masterwear Corp., 229 B.R. 301, 310 (Bankr. S.D.N.Y. 1999); *In re* Ionosphere Clubs, Inc.*,* 171 B.R. 18, 21 (S.D.N.Y. 1994). Additionally, Bankruptcy Rule 9020 allows Bankruptcy Courts to punish contempt committed in or outside the presence of the court. *See In re* Chateaugay Corp., 920 F.2d 183, 186 (2d Cir. 1990). Among the devices at the Bankruptcy Court's disposal in carrying out its obligations is the power to impose sanctions. *See id.* at 187.

35.   "Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." American Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 585 (5th Cir. 2000) *citing* United States v. United Mine Workers of America*,* 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947); *see also*

Norman Bridge Drug Co. v. Banner, 529 F.2d 822, 827 (5th Cir.1976) ("Compensatory civil contempt reimburses the injured party for the losses and expenses incurred because of his adversary's noncompliance.").

36. In order for sanctions to be imposed for failure to comply with an order, it must be shown that (1) the order not complied with is clear and unambiguous, (2) the proof of the noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner. *See* King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995).

37. The elements necessary to hold Wells Fargo in contempt were met in this matter. Wells Fargo defiantly and unilaterally ignored its own open Court agreement, as memorialized in this Court's Utility Order, by not funding the NYSEG payment in the manner in which it agreed.

38. There is no question but that Wells Fargo and its counsel agreed, plainly, to each share in the expense of paying the Utility so as to preserve the sale to Boreal. *See*, Exhibit "B". This was clearly in the best interest of Wells Fargo. However, Wells Fargo, did not advance the funds on its own behalf or from the fees of its counsel, but rather charged the Debtor's account. *See*, Zwerman e-mail at Exhibit "A". It also appears that Wells Fargo charged Boreal an additional interest point. *See*, Exhibit "D". This violated, at a minimum, the Court's Utility Order and at worst amounted to a fraud on this Court as it was in direct contradiction to the promises made in open Court on March 27, 2009.

39. A court has broad discretion when assessing damages for civil contempt. *In re All Trac Transp., Inc.*, 306 B.R. 859, 898 (Bankr.N.D.Tex.2004) (citations omitted). 'The purpose is to compensate for the damages sustained. The public rights that the said court orders sought

to protect are important measures of the remedy." Long Island Rail. Co. v. Brotherhood of Rail. Trainmen, 298 F.Supp.1347 (E.D.N.Y.1969). Compensation for damages sustained includes actual pecuniary losses. *See*, Am. Airlines, Inc. v. Allied Pilots Ass'n, 228 F.3d 574 (5th Cir. Tex. 2000).

40. To induce Wells Fargo to honor the agreed upon obligations and to avoid further erosion of the value of the estate, this Court should hold Wells Fargo in contempt of Court and impose any appropriate sanction, including compelling Wells Fargo to refund the amount of $35,256.23 to the Debtor, and the costs and fees associated with this motion.

**WHEREFORE**, it is respectfully requested that the Court hold Wells Fargo in contempt of court and impose sanctions against them in the amount of $35,256.23, and grant such other and further relief as is just and equitable.

Dated: January 5, 2010  
       Newburgh, New York

Respectfully submitted,

TARSHIS, CATANIA, LIBERTH,  
MAHON & MILLIGRAM, PLLC  
By:  
*/S/ Nicholas A. Pascale, Esq.*  
NICHOLAS A. PASCALE, ESQ.  
Attorney for the Debtor  
One Corwin Court, PO Box 1479  
Newburgh, NY 12550  
(845)565-1100