*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
POUGHKEEPSIE DIVISION
-----------------------------------------------------------------X

In re A.T. Reynolds & Sons, Inc.,                         Case No. 08-37739
                                                          Chapter 11
                   Debtor.

-----------------------------------------------------------------X

**OPINION SANCTIONING WELLS FARGO BANK, N.A.**
**FOR FAILURE TO COMPLY WITH GENERAL ORDER M-211**
**AND ORDER DIRECTING PARTIES TO MEDIATION**


**A P P E A R A N C E S :**

Douglas Cooper, Esq.
Ruskin Moscou & Faltischek, PC
1425 RXR Plaza
Uniondale, New York 11556

**CECELIA G. MORRIS**
**U.S. BANKRUPTCY JUDGE**

        This decision resolves the Court's Order to Show Cause why Wells Fargo Bank, N.A.

("Wells Fargo") should not be held in contempt of the court orders directing Wells Fargo to

engage in mediation with the Debtor, the Committee of Unsecured Creditors, and Boreal, Inc.

(the "Mediation Parties"). The Court notes at the outset that this opinion addresses only Wells

Fargo's conduct with respect to the mediation itself.  The Court makes no findings regarding the

merits of the underlying issue that caused the Court to order the Mediation parties to mediation.

Any references to the record of the case are made for the limited purposes of providing the

context of the mediation, and for the legal analysis of whether Wells Fargo failed to participate

in the mediation in good faith.

By order dated August 27, 2009 (the "Mediation Order"), the Court ordered the Debtor, CCV Restructuring, Boreal Water Collection, Inc. ("Boreal"), Wells Fargo Bank ("Wells Fargo"), and counsel to the Committee of Unsecured Creditors (the "Committee") (collectively, the "Mediation Parties") to mediation (the "Mediation"). At a hearing on November 17, 2009 (the "November 17 Hearing"), Robert Goldman (the "Mediator" or "Goldman") advised the Court that one of the Mediation Parties failed to participate in the Mediation in good faith, and that he would provide a report to the Court describing his reasons for making this determination. On December 3, 2009, the Court issued an order to show cause (the "Order to Show Cause"), directing Wells Fargo and its counsel to appear and show cause why they should not be sanctioned for contempt of the Mediation Order and General Order M-390, the most current statement of the mediation program for the Bankruptcy Court for the Southern District of New York.[1] The Court held a hearing on the Order to Show Cause on December 31, 2009 (the "Hearing"), which was attended by two representatives of Wells Fargo, and an associate and a partner of Wells Fargo's counsel in this matter, Ruskin Moscou Faltischek, P.C. ("Ruskin Moscou"). Counsel to Debtor and Boreal were present.[2]

The issue is whether mere attendance at court-ordered mediation, without active participation in the mediation process, satisfies the requirement to participate in good faith. The Court holds that attendance without active participation is insufficient to constitute good-faith

---

[1] The mediation program for the United States Bankruptcy Court of the Southern District of New York is presently entitled the "Court Annexed Alternative Dispute Resolution Program" (the "ADR Program"). It was adopted on November 12, 1993, by General Order M-117, and amended on January 18, 1995 by General Order M-143. The ADR Program was amended on October 20, 1999, by General Order M-211, and was most recently amended on December 1, 2009, by General Order M-390. The portions of the ADR Program that governed the Mediation have not changed over the evolution of the ADR Program. The Court refers to the General Orders implementing the ADR Program interchangeably throughout this opinion.

[2] Counsel to the Committee appeared by telephone.

participation in mediation.  In the case at bar, the Court finds that the Mediation Order was clear and unambiguous, and the Court finds clear evidence that Wells Fargo and its counsel failed to participate in good faith.  Therefore, Wells Fargo and its counsel must bear the costs of the mediation as a sanction for their violation of General Order M-211 and the Mediation Order.

### Statement Of Jurisdiction

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. A matter concerning the administration of the estate is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Bankruptcy courts have inherent power to enforce their orders by the imposition of sanctions for acts of civil contempt.  *See In re Chief Executive Officers Clubs, Inc.¸* 359 B.R. 527, 533-534 (Bankr. S.D.N.Y. 2007).  When a party fails to participate in mediation in good faith in contravention of a court order, the remedy traditionally is to pay the other parties' costs in attending the conference.  *Negron v. Woodhull Hosp.*, No. 05-4147-CV, 2006 WL 759806, at *1 (2d Cir. Mar. 23, 2006) (where parties were ordered to appear and mediate in good faith, district court properly required defendant to pay other parties' expenses); *Hughes v. The Lillian Goldman Family, LLC*, No. 00 CIV. 2388, 2000 WL 1228996, at *2 (S.D.N.Y. Aug. 30, 2000); *cf. In re Chief Executive Officers Clubs, Inc.¸* 359 B.R. at 534 ("Civil contempt sanctions may also compensate for any harm that previously resulted").

The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052 and 9014.

**Facts in the case at bar**

*A. Events prior to mediation*

Debtor filed the petition for chapter 11 relief on December 5, 2008. Wells Fargo controlled and disbursed Debtor's cash collateral pursuant to numerous orders of this Court. On March 27, 2009, the Court held an auction and hearing (the "Sale Hearing"), and Debtor was sold as a going concern to Boreal. The sale was made effective by Order signed and entered on April 3, 2009. On August 13, 2009, the Court signed and entered an Order directing Wells Fargo to make a wire transfer of $35,256.23 to New York State Electric and Gas Corp. ("NYSEG") on or before March 31, pursuant to the record of the Sale Hearing (ECF Docket No. 214).

On July 1, 2009, a transcript of the Sale Hearing appeared on the docket (ECF Docket No. 202). On July 8, 2009, counsel to Boreal moved for payment of certain administrative expenses, which were wage claims of Debtor's employees for the week of Monday, March 30 through Friday, April 3, 2009. Boreal alleged that the Debtor was responsible for that week's payment of wages, but that Boreal was forced to pay the wages. Boreal did not name a specific entity that would reimburse it for the wages, but its motion is replete with references to Wells Fargo. Boreal submitted an e-mail exchange as an exhibit, which included messages on which employees of Wells Fargo and its counsel were included as recipients. An affidavit of service filed by counsel to Boreal indicates that counsel to Wells Fargo was served with the motion by electronic means.

Boreal's relief was granted by order dated July 21, 2009; the order did not specify who would pay Boreal, or what the source of the funds would be. On July 31, 2009, the Debtor moved by counsel to reconsider the order allowing Boreal the payment, characterizing payment

of the wages as a "dispute between Boreal and Wells Fargo over the terms reached at the 363

sale." Counsel to Wells Fargo was served with this motion to reconsider by regular mail.

The Debtor, CCV Restructuring, Boreal, Wells Fargo, and counsel to the Unsecured

Creditors' Committee (together, the "Mediation Parties") were sent to mediation by order dated

August 27, 2009, "to attempt to resolve disputes by and between the Mediation Parties relative to

the section 363 sale held on March 27th, 2009 … and the sequelae flowing therefrom**, *including*

*but not limited to the payment of wages for the period March 30, 2009*" (the "Mediation

Order") (emphasis in original).

The Mediation Order provided, *inter alia*:

> [T]hat the Mediation Parties shall furnish the mediator with copies of such documents and such confidential statement of position as the mediator may request; …
> [T]hat within twenty days of appointment, the mediator shall schedule an initial mediation session; …
> [T]hat this mediation shall be conducted in accordance with the United States Bankruptcy Court of the Southern District of New York Amended General Order for the Adoption of Procedures Governing Mediation of Matters in Bankruptcy Cases and Adversary Proceedings dated January 17, 1995, as amended October 20, 1999 … ; …
> [T]hat the Mediation Parties shall attend such mediation sessions as the Mediator shall deem appropriate and necessary at such times and places as the mediator shall determine …

ECF Docket No. 224.

*B. Summary of mediator's report*

On November 17, 2009 the Mediator reported to the Court that one of the Mediation

Parties failed to participate in good faith, and that the Mediator would file a report. The

Mediator filed the report with the Court, in which he made the following allegations:

1. In preparation for the mediation session, Wells Fargo claimed to be "at a loss to fully

understand the issues at hand;"

2. Wells Fargo desired a mediation statement to be filed with the Court, which would identify the issues to be addressed at the mediation;

3. When supplied with such a statement by counsel to Debtor, Wells Fargo objected to language to the effect that the mediation might cover "any other issues anyone wants to discuss, of course";

4. Wells Fargo demanded to know the identities of the individuals who would attend the mediation;

5. Wells Fargo expressed concern that if its demands were not complied with, then the mediation would be a "free for all" which would "waste everybody's time";

6.  Wells Fargo appeared at the mediation by a "junior" representative, a "relationship manager" called Evan Zwerman, and "junior" counsel, Dan McAuliffe;

7. McAuliffe attended the mediation "prepared only to repeat a pre-conceived mantra that indicated that Wells Fargo was not open to any compromise that would involve 'taking a single dollar out of their pocket'";

5. The Mediator's attempts to see if there was any credibility to the concept that the increase in Boreal's interest rate was linked to a payment to NYSEG were deflected by McAuliffe's repeating his mantra;

6. When Goldman told Wells Fargo that he must report the bad faith to the Court, McAuliffe advised Goldman in private that there were two of him (including Zwerman) and just one of the Mediator; and that Goldman "could be assured that Wells Fargo would never agree to my acting as mediator in the future in which Wells Fargo might be a party";

6

7. Wells Fargo's only offer came after the hearing in which the Court stated the consequences of bad faith, and such offer was "unacceptable" to the other parties; and

8. The offer came after McAuliffe and Zwerman spent "an extended period on the phone with an unidentified person, out of the presence of the mediator."

On December 3, 2009, the Court issued an order to show cause (the "Order to Show Cause"), which states in relevant part:

> 8. On December 1, 2009, the Court received the Mediator's statement, in which the Mediator alleges that Wells Fargo failed to participate in the mediation in good faith in that Wells Fargo, among other things, insisted upon a pleading in support of the mediation being filed with the Court and demanded to know the party representatives of the other Mediation Parties; and attended the mediation by appearance of parties without full settlement authority who mostly repeated the mantra that Wells Fargo would not consider any compromise the would involve taking a single dollar out of its pocket.
> 9. If it is found that Wells Fargo failed to participate in good faith, then Wells Fargo will be in contempt of at least two Orders of this Court: General Order No. 390, and the ATR Mediation Order.

ECF Docket No. 230.[3]   The Order to Show Cause expressly provided that Wells Fargo and its law firm would separately show cause why they should each not be sanctioned for contempt of the General Order and the Mediation Order.

In opposition to the Court's Order to Show Cause, Wells Fargo alleges:

1. It sent a representative and an attorney with full settlement authority.

According to Wells Fargo, the officer who attended the Mediation, Evan Zwerman, is 33 years old, has 10 years' banking and asset-based lending experience, and is a Vice President and Senior Banker.  ECF Docket No. 236, Part 5.  He is the "Relationship Manager" of Debtor's account, and has authority to make revolving loans and advances to Debtor.  *Id.*  He had "equal

---

[3] The Court clarified its Order to Show Cause on December 17, 2009, to ensure that a senior officer of Wells Fargo would appear at the hearing on the Order to Show Cause, and that a partner of Wells Fargo's law firm would appear at the hearing.

settlement authority" with his supervisor, Mark Long.  *Id.*  Zwerman states in his affidavit that although his "credit authority" is not unlimited, he had authority to settle the controversy.  *Id.* He affirms, "Notwithstanding my authority, the positions presented to me by the other mediation parties and by the Mediator did not persuade me that Wells Fargo should pay the amounts demanded by the Mediator."  *Id.*

In an affidavit, Robert Ostrowe, Senior Vice President of Wells Fargo, admits, ***"within the parameters of the bank's credit policies***, bank officers, such as Evan Zwerman, are vested with discretion to be exercised within their sound business judgment."  ECF Docket No. 236, Part 4 (emphasis added).

Jeffrey Wurst, a partner of Ruskin Moscou, states in an affidavit that Daniel McAuliffe, who appeared at the mediation, is a "senior attorney" at the firm, and has 10 years' legal experience, including a clerkship with a New Jersey bankruptcy judge.  ECF Docket No. 236, Part 2.

In his affirmation, McAuliffe challenges the substantive statements made by the Mediator, including whether there was a link between the NYSEG payment and the nonpayment of wages; denies acting in an obstructive manner during the mediation; and generally accuses the mediator of not being neutral.  *See* ECF Docket No. 236, Part 6.  McAuliffe expresses dissatisfaction with the Mediator, and expressly denies the Mediator's allegation that McAuliffe threatened the Mediator that he would never mediate for Wells Fargo again.  *Id.*  McAuliffe qualifies his denial of threatening Goldman with the statement, "Following this experience and my current impression of Mr. Goldman, however, it is likely true that I would not willingly agree to his serving as a 'neutral' in a matter in which I am involved."  *Id.*

2. Wells Fargo was not a named party to motion practice related to payment of the wages, and therefore had no idea what the Mediation was about or how to prepare for it.

Wells Fargo insists that it was not named directly as a culpable party in the motions that preceded the Mediation.  ECF Docket No. 236, Part 2, 6-7.  An item of controversy is Wells Fargo's insistence on being provided a list of issues to be discussed at the Mediation that would limit the issues to be discussed at the Mediation.  *Id.*, 6-8.[4]

The Court notes that the Mediator advised the Mediation Parties in an e-mail that the issues would not be limited to the ones proposed by Debtor's counsel – it is for the mediator to decide which issues were relevant.  The Mediator stated, "We will go where the river takes us." ECF Docket No. 236, Part 3, Exh. C.

In his affidavit in response to the Court's Order to Show Cause, Jeffrey Wurst, counsel to Wells Fargo, includes a pre-mediation e-mail exchange between himself and the Mediator, in which Wurst responds to the message referenced in the preceding paragraph:

> We have not been involved in this matter since early April 2009.  It appears that subsequent to that date a dispute arose and it appears that those issues have been referred to mediation.  I suggest that before we can prepare any statement for you we need to know what it is that is being submitted to mediation.  Absent that there is nothing for us to present to you because we do not know the issues.  Nothing productive can be achieved from a "free for all" mediation.  Certainly we cannot be prepared to discuss any issue that is not first placed on the proverbial table.

> Although we have been involved in many mediations in the Bankruptcy Court for the Southern District of New York, and have found them to be effective, this is the first time we are asked to participate in a process where no issues have first been presented in writing to the Court.  Thus we remain puzzled. We submit that to have us all come to a mediation wholly unprepared would be a waste of everyone's time.

> We will be prepared to discuss only the five items enumerated by [Debtor's counsel].  In the event any additional issues are raised we will address them at the

---

[4] This matter is further referenced in the Mediator's Report, which is not available for viewing on ECF due to its confidential nature.

mediation only if we feel we are able to without the benefit of reviewing any documents or other preparation.

ECF Docket No. 236, Part 3, Exh. C.  An additional e-mail exchange supports the Mediator's allegation that counsel to Wells Fargo demanded to know the identities of the representatives. ECF Docket No. 236, Part 3, Exh. D.

3. Courts cannot force parties to settle, and parties are free to adopt "no-pay" positions at settlement conferences.

In response to the Court's Order to Show Cause, Wells Fargo argues that the law in the Second Circuit is that a court cannot force parties to settle.

4. Boreal did not send a principal to the mediation, either.

In his affirmation, McAuliffe alleges that Boreal was represented by Vivian Faliski, a "bookkeeper."  The Mediator apparently mistook her for a principal with full settlement authority for Boreal.

In its brief support of sanctions, Boreal asserts that Faliski is the "Controller" of Boreal. Boreal asserts that Faliski had first-hand knowledge of the facts involved in the mediation, and that "Boreal at the mediation was in a position to and in fact did agree to certain matters in order to facilitate a potential resolution proffered by the Mediator."  Boreal emphasizes that it is Wells Fargo's conduct that is at issue, not Boreal's.

In its brief support of sanctions, counsel to Debtor alleges that between Faliski and Wayne Day, Debtor's financial advisor, who were both in attendance, "there was more than sufficient human presence to effectuate a proper mediation."

*C. Hearing on December 31, 2009*

Wells Fargo presented much testimony to the effect that it believed that the law was on its side, and that the Mediation was primarily concerned with legal liability. *See, e.g.* Tr. at 21, ll. 3-9; 23, ll. 20-21; 61-62, ll. 21-1; 66, ll. 6-10.

Robert Ostrowe, a senior vice president of Wells Fargo, testified that Zwerman and another witness "are able to administer loans on a routine basis daily and approve advances for millions of dollars as long as they're within borrowing base formulas." Tr. at 47, ll. 5-7. Additionally, Zwerman allegedly had authority to settle the matter for up to $35,000, which Wells Fargo understood to be the amount at issue. *See* Tr. at 49, ll. 7-16.

The Court called the Mediator to testify. The Mediator commenced his testimony by describing his qualifications: He attended the Wharton School of the University of Pennsylvania and Harvard Law School, was admitted to practice law in 1959, and has been a mediator for thirty of the fifty years that he has practiced law. Tr. at 68, ll. 4-25. He has been a mediator in the Southern District of New York since 1999, and became a mediator in the bankruptcy courts several years ago. Tr. at 69, 1-4. The Mediator has never reported a failure to participate in good faith in his years of mediating until making the report that is the subject of this opinion. Tr. at 69, 5-9.

The Mediator testified that, at the outset of the mediation session, McAuliffe interrupted one of the Mediation Parties while he was making an argument of linkage between two events in the case, which was related to that party's theory of liability.[5] Tr. at 80-81, ll. 18-6. The Mediator continued his testimony:

> The Mediator: I asked Mr. McAuliffe if he would kind of withhold it, because on the surface it appeared at least there was a linkage, to which he resisted, no, and at

---

[5] The Court is careful to not discuss the substance of the mediation or the merits of any underlying issues.

that point I asked him to step into the other room because there was just no getting past that point.  And then we went –

The Court: Is that a common mediator practice, what you just did?

The Mediator: It is very common, not that quick.  And it was only because at this moment it just had run into a complete roadblock so that the discussion couldn't even continue.

Tr. at 82-83, ll.23-3.  The Mediator further testified,

They did not go through risk analysis.  They went simply through reiterate – reiterating the position they walked into the room with, which they had stated even prior to mediation. In other words, there was nothing that I could say even to get them to consider whether or not there was risk, there was exposure.

Tr. at 85, 17-23.  The Mediator's testimony was confirmed by that of counsel to Boreal:

Counsel to Wells Fargo: What caused this to stop was the interjection by Mr. McAuliffe in response to something you were saying during your statement to the mediator?

Counsel to Boreal: It was stopped because we weren't even getting past square one.

Counsel to Wells Fargo: And that's because Mr. McAuliffe expressed a contrary view or, even stronger, said that you were wrong in something that you were saying?

Counsel to Boreal: No, it wasn't a contrary view, or I was wrong, it was a refusal to even, for the sake of discussion, assume that that might be the case.

Tr. at 135, ll. 12-22.  Counsel to the Debtor confirmed the testimony of the Mediator and

Counsel to Boreal that counsel to Wells Fargo would not entertain discussion that Wells Fargo's

theory might be wrong:

Counsel to the Debtor: And it was sometime either during Mr. Portman's statement – or had ended, or during the middle of it, that I think that Mr. McAuliffe began to state his position on behalf of the bank.

The Court: And what happened at that moment?

Counsel to the Debtor: Mr. McAuliffe began to annunciate Wells Fargo's feelings.  And then it turned from – well, Mr. Portman's piece  stopped and Mr.

McAuliffe and Mr. Goldman had it back and forth concerning the issue of linkage
… And then, at that point it, the session, the general session, was broken off.

At the hearing, Wells Fargo did not rebut the allegations that it and its counsel had

threatened the Mediator.  Wells Fargo did not dispute that the eventual offer was made to the

other Mediation Parties after a private phone conversation with an undisclosed party.

**Principles of mediation**

"Mediation isn't about whether you're going to lose or how much you are going to win.

It is about identifying critical risks up front." Interview with Stephen P. Younger, Patterson,

Belknap, Webb & Tyler LLP, *Project: EDR Part III; Stephen Younger: Making EDR A Reality*,

The Metropolitan Corporate Counsel, Oct. 2000, Northeast Ed., at 49.

"Mediation is a process in which an impartial third party acts as a catalyst to help others

constructively address and perhaps resolve a dispute, plan a transaction, or define the contours of

a relationship."  Carrie Menkel-Meadow et al., Mediation: Practice, Policy and Ethics 91 (2006).

"Mediation permits, indeed often requires, consideration of underlying interests, causes or values

that produce conflict and thus permits the management, handling or resolution of broader

concerns than just those 'disputes' which crystallize at the tip of the iceberg." *Id.* at 100-101.

> Among other things, mediation can result in the following: (1) an early
> assessment by the parties of the relative strengths and weaknesses of their
> positions; (2) a focusing and narrowing of the issues involved; (3) an objective
> evaluation of the case; (4) a tempering of the parties' expectations; and (5) an
> expeditious calculation of the actual damages involved.

A. Ross Pearlson, *Mediation: A Catalyst For Efficient Dispute Resolution*, The Metropolitan

Corporate Counsel, Aug. 2002, Northeast Ed., at 13.

> Frequently, with significant issues of fact and law in dispute, parties enter
> mediation by resolutely assuring themselves and the mediator that they will
> prevail if the case goes to trial. Since both parties cannot be correct, the mediator
> spends considerable time working to change the parties' perceptions. This enables

the parties to take a more realistic view of likely outcomes, and paves the way for a more thorough assessment of settlement possibilities.

Harold Himmelman, *ADR Will Work If You Use It Wisely*, The Metropolitan Corporate Counsel, Aug. 1999, Mid-Atlantic Ed., at 6. The mediator forces each party to confront its own risk. When disagreements remain, the mediator might use probability risk analysis. *Id.*

"[T]here [has] to be a party representative with authority to settle whatever [comes] up because mediation sometimes takes on a life of its own and sometimes you find out the real argument is something other than what they're doing." Robert Goldman, Transcript of Hearing, 71, ll. 19-23, *In re A.T. Reynolds & Sons, Inc.* (No. 08-37739) (ECF Docket No. 241) (hereafter, "Tr."). "Meaningful negotiations cannot occur if the only person with authority to actually change their mind and negotiate is not present. Availability by telephone is insufficient because the absent decision-maker does not have the full benefit of the ADR proceedings, the opposing party's arguments, and the neutral's input." *Nick v. Morgan's Foods, Inc.*, 99 F. Supp. 2d 1056, 1062 (E.D. Mo. 2000) (court denied motion for reconsideration of its conclusion that party failed to participate in good faith in ADR process; earlier award of sanctions was upheld and supplemented for party's "vexatious multiplication" of proceedings).

Even where a party believes that it has a "slam-dunk" case with the law on its side, it might benefit from the mediation in that it can persuade the other parties that they will be unsuccessful if the case must be decided on the merits.

"Mediation is a process in which the parties must work together, with the assistance of a trained facilitator, to devise a solution to their dispute. If either side is unwilling to do so, and insists upon being deemed the 'winner' at the end of the process, the mediation will fail A. Ross Pearlson, *Mediation: A Catalyst For Efficient Dispute Resolution*, The Metropolitan Corporate Counsel, Aug. 2002, Northeast Ed., at 13.

Mediation entails a process, and requires parties to hear each others' points of view and proposed resolutions to the issue underlying the mediation. Passive attendance at mediation cannot be found to satisfy the meaning of participation in mediation, because mediation requires listening, discussion and analysis among the parties and their counsel. Adherence to a predetermined resolution, without further discussion or other participation, is irreconcilable with risk analysis, a fundamental practice in mediation. While it goes without saying that a court may not order parties to settle, this Court has authority to order the parties to participate in the process of mediation, which entails discussion and risk analysis. Therefore, the Court holds that where a party is ordered to participate in mediation, the party fails to comply with the order when it does not engage in the process of mediation, which entails consideration of the other parties' arguments.

### Mediation compared with arbitration and ordinary negotiations.

In mediation, the role of the mediator is to aid in identification of issues, clarify interests, explore alternatives, generate options, and facilitate negotiations. Jeff Abrams, *Mediator Skills Training and Reference Manual*, Mediation & Effectiveness Training Institute, B-6 (1996). In arbitration, the role of the arbitrator is to listen to facts and evidence, and render an award. *Id.* In mediation, the parties retain some control over the disposition of the matter at stake; in arbitration, the parties are bound by the determination of the arbitrator.

### The mediation program for the U.S. Bankruptcy Court for the Southern District of New York

The United States Bankruptcy Court, Southern District of New York, adopted a mediation program in 1993. When the parties held their mediation session on November 17,

2009, the program was governed by General Order M-211.[6]  General Order M-211 provides in

relevant part:

>1.0    <u>Assignment of Matters to Mediation.</u>
>
>1.1 <u>By Court Order.</u>  The court may order assignment of a matter to mediation upon its own motion, or upon a motion by any party in interest or the U.S. Trustee.
>
>*** 1.3 <u>Types of matters subject to Mediation.</u>  Unless otherwise ordered by the presiding judge, any adversary proceeding, contested matter or other dispute may be referred by the court to mediation.
>
>1.4 <u>Mediation Procedures.</u>  Upon assignment of a matter to mediation, this General Order shall become binding on all parties subject to such mediation.
>
>*** 3.0 <u>The Mediation.</u>
>
>3.1 <u>Time and Place of Mediation.</u>  Upon consultation with all attorneys and <u>pro se</u> parties subject to the mediation, ***the mediator shall fix a reasonable time and place for the initial mediation conference*** of the parties … To ensure prompt dispute resolution, ***the mediator shall have the duty and authority to establish the time for all mediation activities***, including private meetings between the mediator and parties and the submission of relevant documents. …
>
>3.2 <u>Mediation Conference.</u>  A representative of each party shall attend the mediation conference, and must have complete authority to negotiate all disputed amounts and issues.  ***The mediator shall control all procedural aspects of the mediation.***  The mediator shall also have the discretion to require that the party representative or a non-attorney principal of the party with settlement authority be present at any conference. … The mediator shall report any willful failure to attend or participate in good faith in the mediation process or conference.  Such failure may result in the imposition of sanctions by the court.
>
>*** 5.0 <u>Confidentiality.</u>
>
>5.1 <u>Confidentiality as to the Court and Third Parties.</u>
>
>[Generally, the substance of the mediation is confidential.]  Nothing in this section, however, precludes the mediator from reporting the status (though not content) of the mediation effort to the court orally or in writing, or from complying with the obligation set forth in 3.2 to report failures to attend or to participate in good faith.[7]

---

[6] The mediation program was updated in 1999 by General Order M-211 to provide for arbitration, and again in 2009 by General Order M-390 to revise procedures.  The substantive provisions of General Order M-211 that govern this matter are unchanged by the most recent General Order.

[7] On the record of a hearing held on November 17, 2009, the Mediator expressed his intent to prepare his report of the mediation session in writing and submit it directly to chambers.  The parties who were present did not have any objection to the Mediator's proposal.  In interest of

General Order M-211, Amended General Order M-143, *In re: Expansion of General Order M-143 to Include the Use of Early Neutral Evaluation and Mediation/Voluntary Arbitration* (1999), *available at* http://www.nysb.uscourts.gov (emphasis added).

It is clear from the foregoing that in the mediation program for the Bankruptcy Court for the Southern District of New York, the mediator controls the mediation. It is also clear that this mediation program requires parties ordered to mediation to participate in good faith, because the General Orders provide for the imposition of sanctions when a party fails to participate in good faith. To ensure good faith participation, the mediators are required to report failures to participate in good faith, and they are relieved from rules of confidentiality to the extent necessary to do so. The mediation program was developed to allow flexibility – according to section 1.3, any dispute may be sent to mediation; specific pleadings or other structures are not required by the terms of the General Orders. This design is consistent with the facts that mediation often reveals issues and concerns lurking beneath "the tip of the iceberg," and that, as the Mediator testified, mediations often take on lives of their own.

### Legal analysis of whether a party participates in mediation in good faith

28 U.S.C. 1927 provides that a court might require an attorney to pay the costs of its adversary when the attorney vexatiously compounds the proceedings.[8] Fed. R. Civ. P. 16 permits federal courts to direct parties to appear for pretrial conferences including settlement

---

due process, the Court provided a copy of the report to the Mediation Parties by e-mail on December 4, 2009.

[8] 28 U.S.C. § 1927 provides:
**Counsel's liability for excessive costs**
Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

conferences, and grants federal courts authority to issue sanctions for failure to participate in such a conference in good faith.[9]

As stated above, bankruptcy courts have inherent authority to compel compliance with their orders through civil contempt.  A court may hold a party in civil contempt pursuant to its inherent powers when (1) the order the party allegedly failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply.  *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. at 535.  "[T]he clear and convincing standard requires a quantum of proof adequate to demonstrate reasonable certainty that a violation occurred."  *Id.*

Wells Fargo provides a law review article that is critical of mediation, which provides the following definition of good faith:

> "Good faith" is an intangible and abstract quality with no technical meaning or statutory definition.  It encompasses, among other things, an honest belief, the absence of malice and the absence of a design to defraud or to seek an unconscionable advantage.  An individual's personal good faith is a concept of his own mind and inner spirit and, therefore, may not conclusively be determined by his protestations alone.

---

[9] Fed. R. Civ. P. 16 provides in relevant part:
**Pretrial Conferences; Scheduling; Management**
**(a) Purposes of a Pretrial Conference.**  In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conference for such purposes as:
  (1) expediting disposition of the action;
  ***(5) facilitating settlement.
***(f) Sanctions.**
  (1) ***In General.***  On motion or on its own, the court may issue any just orders … if a party or its attorney:
    ***(B) is substantially unprepared to participate – or does not participate in good faith – in the conference;
  ***(2)  ***Imposing fees and Costs.***  Instead of or in addition to any other sanction, the court must order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust.
Fed. R. Civ. P. 16 (2009).

John Lande, *Using Dispute System Design Methods to Promote Good-Faith Participation in Court-Connected Mediation Programs*, 50 U.C.L.A. L. Rev. 69, 77 (2002). This definition is repeated in Boreal's brief in support of the Order to Show Cause.

Wells Fargo cites three cases in its brief in response to the Order to Show Cause. In *Negron v. Woodhull Hosp.*, No. 05-4147-CV, 2006 WL 759806 (2d Cir. Mar. 23, 2006), the district court granted the plaintiff a default judgment and an award of attorney fees when the defendant failed to bring a principal to the mediation. Wells Fargo cites this case for the dicta that a party may adopt a "no-pay" position at a mediation. The actual language reads as follows: "While the [defendant] was free to adopt a 'no pay' position, ***its failure to bring a principal party was a violation of a court order and impaired the usefulness of the mediation conference***." *Negron*, 2006 WL 759806 at **1 (emphasis added).

In *Negron*, the Court of Appeals for the Second Circuit reversed the award of a default judgment as a sanction for failure to participate in good faith in mediation, holding that the penalty was inappropriate for the offense. *Negron*, 2006 WL 759806 at **1. The court upheld the sanction of fees in favor of the other mediation party. For purposes of the matter at bar, this Court finds that *Negron* is only relevant for the unremarkable proposition that a court cannot compel the parties to settle.

*Negron* cannot be interpreted to mean that a party may decide in advance that it will not pay and send in an agent to sit through the mediation and parrot that it won't pay. If mere attendance were all that were required for good-faith participation, then the federal statutes that encourage mediation would be rendered meaningless. *See* 28 U.S.C. 473(a)(6) (district courts

may make available mediation)[10]; 28 U.S.C. 1927 (an attorney must pay others' costs that are incurred because of that attorney's vexatious conduct); Fed. R. Civ. P. 16; *In re Chief Executive Officers Clubs, Inc.*, 359 B.R. at 534 (bankruptcy courts can enforce its orders by the imposition of sanctions for acts of civil contempt).

In *Negron*, the Second Circuit noted in a footnote that "a party is not required to change its settlement parameters by reason of a court order to attend a settlement conference." *Negron*, 2006 WL 759806 at **1 n.1. This dicta cannot be construed to mean that a party can decide ahead of the mediation that it will accept a single, preconceived settlement, and then refuse to engage in the risk analysis that is fundamental to mediation. Such a close-minded approach to mediation would render the whole process meaningless – parties can exchange settlement offers without comment, debate or explanation, and without the benefit of a mediator.

In consideration of all the federal statutes that discourage obstructive behavior, the Court construes *Negron* to mean that at the conclusion of the mediation process, a party cannot be forced to settle. *Negron* cannot be stretched to mean that a party's mere attendance at mediation, without participation beyond insisting that it won't settle, is sufficient for compliance with the court's order directing the parties to engage in mediation; such an outcome would render the above-referenced federal statutes superfluous. *See also Hughes v. The Lillian Goldman Family,*

---

[10] 28 U.S.C. § 473 provides:
**Content of civil justice expense and delay reduction plans**
   (a)In formulating the provisions of its civil justice expense and delay reduction plan, each United States district court, in consultation with an advisory group appointed under section 478 of this title, shall consider and may include the following principles and guidelines of litigation management and cost and delay reduction:
      (6) authorization to refer appropriate cases to alternative dispute resolution programs that –
         (A) have been designated for use in a district court; or
         (B) the court may make available, including mediation, minitrial, and summary jury trial.
28 U.S.C. § 473 (2006).

*LLC*, No. 00 CIV. 2388, 2000 WL 1228996, *2 (S.D.N.Y. Aug. 30, 2000) ("Even where the case does not settle at the settlement conference, the settlement conference often begins the dialogue that ultimately leads to settlement.").

Additionally, Wells Fargo committed the same offense as the offending party in *Negron*: The Second Circuit affirmed an award of costs where the party did not produce a party with settlement authority at the mediation. The Court finds that attending a mediation session without authority to settle or to participate in the mediation process is tantamount to not attending. The Court has not been presented with sufficient evidence to support a finding that Zwerman and McAuliffe had the requisite authority to settle the matter. Zwerman was allowed to settle for up to a predetermined cash amount; McAuliffe was prepared to advise Zwerman with regard to only predetermined theories of legal liability. Wells Fargo did not present evidence that its ultimate offer of settlement was made without resorting to a phone call. As discussed herein, availability by phone does not satisfy the requirement that a party attend with full settlement authority.

Wells Fargo cites *Bulkmatic Transp. Co. v. Pappas*, No. 99-Civ.-12070, 2002 WL 975625 (S.D.N.Y. May 9, 2002) for the proposition that a party cannot be forced to change its settlement parameters by an order to attend a settlement conference. The actual language reads as follows: "Although a court cannot force litigants to settle an action, it is well established that a court can require parties to appear for a settlement conference, and impose sanctions pursuant to Rule 16(f) if a party fails to do so." *Bulkmatic Transp. Co.*, 2002 WL 975625 at *1. In *Bulkmatic Transp. Co.*, an attorney failed to appear at a settlement conference, and the district court awarded the plaintiff an award of $1,000, finding this to be a more reasonable assessment of the plaintiff's costs than the fees of $2,634.60 that it sought as damages. As in *Negron*, the Court finds that *Bulkmatic Transp. Co.* stands for the proposition that a court cannot force a

settlement; this interpretation does not allow parties to wrest control of the mediation from the mediator in contravention of the court's orders, or to resist participation in the mediation.

Finally, Wells Fargo cites *Dawson v. United States*, 68 F.3d 886 (5th Cir. 1995), for the proposition that parties cannot be forced to settle. *Dawson* involved a sanction imposed against government lawyers for their failure to settle with an inmate who allegedly injured his shoulder in a prison softball game. *Dawson* is so factually distinguishable from the case at bar that it is irrelevant and of no guidance to this Court. In *Dawson*, the appellate court was more concerned with the public policy of not squandering taxpayer dollars on frivolous prisoner lawsuits than enforcement of a local rule regarding settlement conferences: "In light of the increasing flood of prisoner litigation that threatens to submerge our courts, [a plaintiff's status as a prisoner] is extremely relevant [in determining whether to make a settlement offer], especially when the Government is the defendant and the taxpayers will be footing the bill for any settlement." *Dawson*, 68 F.3d at 898. Additionally, the prisoner in *Dawson* defaulted on numerous appearances and other obligations as a plaintiff; comparable inattention by Boreal, the Committee and the Debtor is not present in the matter at bar. This Court will not be persuaded by any statement in *Dawson* that suggests that a party may not be sanctioned for failure to participate in court-ordered mediation in good faith.

The Court holds that that Wells Fargo and its counsel failed to participate in the mediation in good faith as required by General Order M-211, and therefore Wells Fargo and its counsel must pay the Mediator and the other parties their costs in preparing for and attending the mediation. The Court concludes that attendance at a mediation without participation in the discussion and risk analysis that are fundamental practices in mediation constitutes failure to participate in good faith.

The Court is guided by *Fisher v. SmithKline Beecham Corp.*, No. 07-CV-0347A(F), 2008 Dist. LEXIS 76207 (W.D.N.Y. Sept. 29, 2008), in reaching its conclusion.  In *Fisher*, a plaintiff attempted suicide after taking defendant's product and sued.  *Fisher*, 2008 Dist. LEXIS at *2. The parties were referred by court order to mediation.  *Id.* at *3.   Defendant filed a motion for summary judgment the day before the mediation.  *Id.* at *4.   Defendant's counsel handed plaintiffs' counsel a copy of the memorandum of law in support of the motion at the mediation, which the court found was generally the extent of defendant's presentation of its case at the mediation.  *Id.* at *5, *18.   Defendant's counsel said that unless plaintiff's counsel could explain why the action was not time-barred as argued in the memorandum of law, the defendant would offer just $1,000.  *Id.* at *5.  The mediation session was terminated.  *Id.*

Plaintiffs sought sanctions per Fed. R. Civ. P. 16(f) and the court's alternative dispute resolution plan, for defendant's filing the motion for summary judgment the day before the mediation, and defendant's failure to participate in good faith.  *Fisher*, 2008 Dist. LEXIS at *5-*6.  The court granted the motion for sanctions as to defendant and its counsel, and awarded plaintiffs their costs in attending the mediation.  *Id.* at *21.  The court found "clear evidence" that the defendant's conduct was without merit and undertaken for improper purposes, as required by 28 U.S.C. § 1927: "Defendant's failure to timely advise Plaintiffs of the summary judgment motion Defendant intended to filed cause d Plaintiffs to unnecessarily incur expenses for no good reason." *Fisher*, 2008 Dist. LEXIS 76207 at *21.

Similarly, in the case at bar, Wells Fargo and its counsel showed up at a court-ordered mediation.  Wells Fargo's counsel insisted on being dissuaded of the supremacy of its legal obligation, in lieu of participating in discussion and risk analysis.  Upon review of Wells Fargo's papers in response to the Court's Order to Show Cause and upon the record of the hearing held

on December 31, 2009, the Court finds clear evidence of Wells Fargo and its counsel's misconduct pursuant to 28 U.S.C. § 1927 and the General Orders adopting mediation in this Court, sufficient to award the other Mediation Parties their costs incurred in attending the mediation.

> In its brief Wells Fargo states:
>
> Although Wells Fargo may have entered the mediation believing that it would not be obligated to make any payments, it was open to reconsider this view if the other parties presented it with a basis for liability and/or counter-arguments to its legal position. Wells Fargo was not 'entrenched' in its position, however no such basis was presented, and Wells Fargo was unpersuaded that its legal position was flawed.

ECF Docket No. 236, Part 1. This statement is strongly indicative that Wells Fargo had predetermined that it was not liable, and is the same tactic that caused the courts to award sanctions in *Fisher*. Wells Fargo entered the mediation to assert the supremacy of its legal argument, and not to contemplate risk analysis. Wells Fargo's assertion that it was open to reconsideration is unpersuasive given its dilatory behavior leading up to the mediation. Further, the settlement offer came only after threat of sanctions and was considered to be insincere by the Mediator and counsel to the Debtor. Tr. at 144, ll. 8-12. Further, it is in direct contradiction with three witnesses' testimony that Wells Fargo would not discuss whether there was any link between two substantive events in the case, and that its counsel squashed any potential legal debate by interrupting counsel to Boreal when he attempted to discuss such a link. The Mediation was barely underway when counsel to Wells Fargo disrupted it by interrupting counsel to Boreal and thwarting any discussion about the linkage of the two substantive events. The Court is guided by *Fisher* in finding that, having predetermined that there was no legal liability, Wells Fargo engaged the other parties in an exercise in futility by attending the

Mediation, failing to participating in the mediation activities including risk analysis, and cutting off any discussion of the substantive issues.

The Court rejects Rusking Moscou's concerns about waste and confusion as frivolous. When the Mediator stated that it was for him, not Debtor's counsel, to decide what the issues would be, Wells Fargo flatly responded that it would only address Debtor's counsel's five issues, unless it felt like it was able to. The above-quoted e-mail exchange supports the allegations of the Mediator's report that Wells Fargo resisted participation in the mediation and sought to wrest control of the mediation from the Mediator.

If Wells Fargo went into the Mediation blind, it was because it closed its own eyes. Less than six months had passed between Wells' Fargo's purported exit from the case and entry of the Mediation Order. Wells Fargo had controlled Debtor's cash collateral, and Boreal assumed Debtor's loan obligation to Wells Fargo. Obviously, if there were an issue concerning payment of wages, then cash collateral and therefore Wells Fargo would be implicated. Contrary to its assertion that nothing had been presented in writing to the Court, Boreal had made a motion for payment of wages (ECF Docket Nos. 203, 204, 205), and Debtor had moved to reconsider the order granting that motion (ECF Docket No. 211, 212). Counsel to Wells Fargo was served by various means with the motions related to the wages, and is named throughout the papers. ECF Docket Nos. 203, 204, 205, 211, 212). Before the motions were filed, Wells Fargo and its counsel were parties to e-mail messages regarding the payroll, in which the Sale Hearing was referenced (though the Sale Hearing is not mentioned by date, Debtor's financial advisor, Wayne Day of CCV Restructuring, wonders in an e-mail whether he heard something wrong in the court room) (ECF Docket No. 204). Transcripts of the Sale Hearing and the hearings revolving Boreal's effort to be reimbursed for the wages were readily obtainable.

Finally, the message carries the tone that Wurst and Wells Fargo were engaging in the Mediation of their own will, as a begrudging favor to the other Mediation Parties: "We need to know the issues before we can prepare a statement"; "We want to avoid wasting time"; "We will only discuss the enumerated issues." In reality, Wells Fargo was bound to participate in the Mediation by Court Order. Wells Fargo was required by the Mediation Order to follow General Order M-211 and obey the Mediator. Wells Fargo did not achieve some special status that excused it from complying with the Mediation Order by way of its limited time and continuous befuddlement despite having been served with every paper since the Sale Hearing.

The Court finds that the identity of the other Mediation Parties' representatives was of no concern to Wells Fargo. Wells Fargo was ordered, like the other Mediation Parties, to attend the Mediation. There was no provision in that Order that the failure of one party to send an appropriate representative would excuse compliance by the other parties. Wells Fargo did not have the option to not comply with the Order if it perceived that the other parties were not going to comply.

The Court finds that counsel to Wells Fargo sought to control the procedural aspects of the mediation by resisting filing a mediation statement and demanding to know the identities of the other party representatives. General Order M-211 expressly provides that the mediator shall control the procedural aspects of the mediation. The Mediation Order provides that the Mediation Parties will supply the Mediator with such confidential statement as the Mediator requires, and that the Mediator shall schedule the mediation session. The Mediation Order expressly incorporates the provisions of General Order M-211. The Court holds that Wells Fargo's conduct was a violation of the terms of General Order M-211 and the Mediation Order.

Having determined that Wells Fargo violated the terms of General Order M-211 and the Mediation Order, the Court could properly require Wells Fargo and its counsel to pay the other parties' costs incurred in attending the wasted mediation. The Court feels compelled to address Wells Fargo's argument that it could determine its liability in advance of the mediation, and attend without engaging in risk analysis beyond insisting that it was not liable. In his report, Goldman does not take issue with Wells Fargo's adoption of a "no-pay" position. Goldman alleges that in repeating its mantra that Wells Fargo refused to "take a single dollar out of its pocket," Wells Fargo failed to consider any settlement at all or otherwise meaningfully participate in the mediation. Further, if Zwerman and McAuliffe were sent with a "no-pay" position from which they could not deviate, this is suggestive of their not having full settlement authority – they could not consider any alternate resolution or concede any risks associated with strict adherence to their "no-pay" position. Taking a "no-pay" position cannot mean that a party may predetermine that it is not liable, and show up at the mediation and refuse to participate in discussion, or consider any risk or other argument in favor of settlement. Such a rigid interpretation of "taking a no-pay position" would render mediation futile, and cannot stand in light of the fact that discussion and risk analysis are inherent in mediation, and myriad federal rules permit mediation and provide for penalties for obstructive behavior.

The Court finds that Wells Fargo's alleged confidence in its lack of liability is inconsistent with its earlier assertions of befuddlement regarding the substance of the mediation. If Wells Fargo was truly unable to discern what the mediation would be about, then it would have been unable to prepare a bulletproof legal analysis. Even though counsel to the Debtor supplied Wells Fargo with a list of five possible issues, the Mediator unequivocally advised all the parties that "they would go where the river took them," and that it was the province of the

Mediator to select issues for discussion and analysis. Strict adherence to a predetermined theory of liability is inconsistent with the fluid nature of mediation, and, in the matter at bar, suggests that Wells Fargo was disingenuous and obstructive in demanding pleadings and other filings when it knew perfectly well where the Mediation would likely go. Additionally, Wells Fargo's insistence on being persuaded that its argument was wrong, and refusing to engage in other discussion, inappropriately impaired the other parties' ability to discuss their concerns and therefore impaired the usefulness of the mediation. Wells Fargo was a participant in mediation, not an arbitrator of its own issues. It was not Wells Fargo's right or role to appear at the mediation for the limited purpose of being convinced that its legal theory was wrong. As stated above, mediation is not about winning or losing; it is about identifying risks.

Three witnesses testified that Wells Fargo obstructed discussion of a point of view other than its own, by interrupting counsel to Boreal during his initial presentation and refusing to let the discussion continue. This testimony contradicts Wells Fargo's allegation that it was open to hearing a legal position other than its own. The Court stated on the record that it found Wells Fargo's witnesses to not be credible. Tr. at 163, ll. 14-19. The Court finds from the testimony of the Mediator and counsel to Debtor and Boreal that counsel to Wells Fargo obstructed the discussion from the outset – it would not even permit one party to express its point of view.

The Court finds that Zwerman did not have the authority to settle the matter, for purposes of mediation. Tr. at 160, ll. 2-4. The Court does not question Zwerman's experience or personal knowledge of the case. The Court holds that Wells Fargo failed to comply with the Mediation Order by sending an agent whose authority was generally limited by "borrowing base formulas," with settlement authority up to a predetermined amount. While the Court understands that most companies do not have many employees with unlimited, unbridled settlement authority,

28

Zwerman does not appear to have had the authority to enter into creative solutions that might have been brokered by the Mediator.  Additionally, in sending Zwerman, who could settle for up to a predetermined cash amount, Wells Fargo and its counsel did not provide for the very real possibility that the amount in controversy might have turned out to be in excess of $35,000.

The Court does not dispute that Zwerman has 10 years' experience or personal knowledge of the Debtor's account.  The issue is whether Zwerman had full settlement authority of a legal issue, not whether he is a competent loan officer or account manager.  Zwerman's title of vice president alone does not persuade the Court that he had full settlement authority.  *See also Hughes v. The Lillian Goldman Family, LLC*, No. 00 CIV. 2388, 2000 WL 1228996 (S.D.N.Y. Aug. 30, 2000) (party was ordered to pay the costs of the other parties, where the offender appeared only by an attorney unfamiliar with the case, and without an employee with decision-making authority);  *Nick v. Morgan's Foods*, 99 F. Supp. 2d 1056 (E.D. Mo. 2000) (court sanctioned defendant that failed to submit a mediation statement and did not send a corporate representative with authority to settle the case).

Furthermore, Zwerman and McAuliffe allegedly presented the offer only after engaging in a private telephone conversation with an undisclosed party.  Tr. at 91, ll. 6-9.  This allegation was not rebutted by Wells Fargo or its counsel.  In the circumstances at bar, a pivotal decision was made by an absent person, who did not have the benefit of observing the mediation and interacting with the other parties and the mediator.  In these circumstances, a pivotal decision was made by an absent person – meaning that the person who attended the mediation did not have full settlement authority, in contravention of the court's order directing the parties to mediation.

The Court notes that an eventual offer of settlement came only after the Mediator expressed his intent to report to the Court on a party's failure to participate in good faith.  Tr. at 95, ll. 9-23.

Upon the foregoing, the Court sanctions Wells Fargo and its counsel pursuant to Fed. R. Civ. P. 16(f), for its failure to participate in the Mediation in good faith.  The Court sanctions Wells Fargo's counsel, Ruskin Moscou, pursuant to 28 U.S.C. § 1927 for its vexatiously causing a fruitless mediation session and subsequent hearing on the Mediator's report of failure to participate in the mediation in good faith.

Finally, the Court holds Wells Fargo and its counsel in contempt of the Mediation Order.  The Court finds that the terms of the Mediation Order are clear and unambiguous.  The Mediation Order clearly defines the powers of the Mediator, granting him authority to require confidential statements of position and to set the time and place of the mediation.  The Mediation Order expressly incorporates the provisions of the General Orders governing the mediation program for the Bankruptcy Court for the Southern District of New York.  The Court has reviewed Wells Fargo's brief in response to the Order to Show Cause, in which it submits e-mail exchanges that show that Wells Fargo and its counsel sought to control the mediation, a clear violation of the Mediation Order, which vests control of the Mediation in the Mediator.  Additionally, the Court heard testimony from three witnesses, including a mediator with thirty years' experience, that counsel to Wells Fargo obstructed and impeded the discussion at the mediation by interrupting the other participants.  Wells Fargo's counsel belabored the infallibility of its legal argument.  The e-mail exchange, testimony, and Wells Fargo's brief in response to the Order to Show Cause are clear and convincing proof of noncompliance; they also show that Wells Fargo and its counsel did not diligently attempt in a reasonable manner to

comply.  Indeed, Wells Fargo and its counsel did everything they could to undermine, delay and

impede the Mediation.

The Court emphasizes that its conclusion that Wells Fargo failed to participate in good

faith is based on a comprehensive review of Wells Fargo's conduct with regard to the Mediation.

Wells Fargo attempted to control the mediation process, by insisting that it be told the identities

of the parties who would attend the Mediation and demanding that a mediation statement be filed

with the Court.  These acts were done despite the Mediator being vested with control of the

mediation pursuant to the General Order and the Mediation Order.  Wells Fargo claimed it was

unaware of any reason it might have to mediate with the Mediation Parties, despite having been

served with all motions that were filed in the months leading up to entry of the Mediation Order.

Once at the Mediation, Wells Fargo simultaneously demanded to know why its legal argument

would not prevail while crushing any discussion of it, instead of considering the risks inherent in

litigation and the possibilities that another legal argument would prevail.  Counsel to Wells

Fargo allegedly threatened the Mediator that he would never mediate another matter to which

Wells Fargo was a party, an allegation Wells Fargo has failed to persuade this Court is false. At

the hearing on the Court's Order to Show Cause, Wells Fargo insisted that its legal position was

foolproof; however, Wells Fargo was directed to participate in mediation, not to sit as its own

judge and jury in an off-the-record proceeding.

## **CONCLUSION**

Wells Fargo failed to participate in the mediation in good faith, as is shown by its dilatory

and obstructive behavior between entry of the Mediation Order and the Mediation Session, and

its insistence on asserting its legal argument to the exclusion of other discussion at the

Mediation.  Wells Fargo's failure to participate in good faith is a violation of General Order M-

31

211 and the Mediation order, and the Court issues sanctions pursuant to its inherent authority to enforce its orders, 28 U.S.C. § 1927 and Fed. R. Civ. P. 16.

Wells Fargo and its counsel shall bear the costs of the Mediation, including the costs of the Mediator and the other Mediation Parties to attend.  The Mediator and the Mediation Parties other than Wells Fargo shall file affidavits setting forth their costs within 14 days of entry of this Decision and accompanying Order.

Dated: Poughkeepsie, New York
        February 5, 2010

/s/ Cecelia Morris
The Hon. Cecelia G. Morris
U.S. Bankruptcy Judge